# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
the person of Q.F.

Case No. 26-936M(NJ)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the Eastern District of Wisconsin *(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before May 12, 2026 *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ❒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Nancy Joseph.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of 10/24/2026.

Date and time issued: 4/29/2026 @ 1:46 p.m.

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*

## ATTACHMENT A

**To be Searched**

The person of QUENTIN FERGUSON.

# <u>ATTACHMENT B</u>

## Particular Things to be Seized

Saliva of QUENTIN FERGUSON, containing epithelial cells, obtained via buccal swab.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of
*(Briefly describe the property to be searched or identify the person by name and address)*
the person of Q.F.

Case No. 26-936M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841; 843; 846 | Distribution of controlled substances; possession of controlled substances with the intent to distribute; unlawful use of a communication facility; conspiracy to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of 180 days *(give exact ending date if more than 30 days:* 10/24/2026*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI TFO Miguel Ortega
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 4/29/2026

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Miguel Ortega, being first duly sworn, hereby state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Police Officer through the Milwaukee Police Department and have been so employed for over twelve (12) years. I was previously assigned to the Milwaukee Police Department's District No. 7 Anti-Gang Unit involved in the investigation of offenses mostly involving, but not limited to narcotics, narcotics trafficking as well as the investigation of individuals prohibited from the possession of firearms within the City of Milwaukee. I am currently assigned as a Federally Deputized Task Force Officer with the Federal Bureau of Investigation's Milwaukee Area Safe Streets Task Force (MASSTF), a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including narcotics trafficking and conspiracy to possess narcotics with intent to distribute, as defined under Title 21 of the United States code, since April of 2020.

2. I have previously applied for and received search warrants for DNA.

3. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Quentin FERGUSON (DOB: XX/XX/ 1986) DNA is probably present on items used in violation of Title 21, United States Code, Sections 841, 843, and 846. There is also probable cause to search the person described in Attachment A for evidence as described in Attachment B.

7. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to collect an oral swab of DNA from Quentin FERGUSON (DOB: XX/XX/ 1986). Since this affidavit is only for the limited purpose of securing a search warrant, I have not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient to establish probable cause for the warrant sought. Because this affidavit is submitted for the limited purpose of securing authorization for a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish probable cause.

## PROBABLE CAUSE

8. Information about Quentin FERGUSON and his illicit activities comes from the following sources and criminal indices: observations made during physical and static electronic surveillance, interviews conducted with a confidential human source, information obtained from other law enforcement officers, a garbage search, and a controlled evidence purchase. Quentin FERGUSON is a mid-level heroin and firearm dealer, who is believed to source his product from a variety of high-level narcotics traffickers operating in Milwaukee, Wisconsin. FERGUSON routinely distributes these drugs as well as traffics firearms in the Eastern District of Wisconsin

and he has used, among other cellular devices, a device assigned call number (414) 491-0916 (hereinafter Telephone 1) to plan, coordinate, and conduct his illicit transactions.

## SOURCE OF INFORMATION

9. In 2025, case agents received information concerning Quentin FERGUSON's illegal drug trafficking and prohibited possession of weapons. Specifically, in March of 2025, a Confidential Human Source (CHS1) advised case agents that FERGUSON was a dealer of heroin and a firearms trafficker. CHS1 advised FERGUSON charges approximately $60.00 in US currency per gram of heroin. CHS1 advised FERGUSON was in possession of two Glock 10mm firearms equipped with machine conversion devices. CHS1 then advised case agents FERGUSON is charging approximately $2000.00 in US currency per pistol. CHS advised he/she was inside of FERGUSON's residence during the month of March 2025 and observed approximately 1,000 grams of heroin, 3 firearms equipped with machine conversion devices, and 4 Draco style pistol rifles. During this time, FERGUSON resided at the address of 5360 N. 38th St. Milwaukee, Wisconsin. CHS1 advised FERGUSON operates a red in color Ford Flex and lives in a single-family residence near 35th-38th St. and W. Villard Av. Case agents conducted a check in law enforcement records which case agents were able to locate a Milwaukee Police Department booking photo of FERGUSON. The case agents then provided CHS1 with the booking photograph, in which the CHS1 confirmed FERGUSON's identity. Case agents conducted a check in law enforcement records, which revealed an address of 5360 N. 38th St. Milwaukee, Wisconsin, which is associated with FERGUSON. On Monday March 10th, 2025, case agents conducted a spot check at the address of 5360 N. 38th St. and observed a red in color 2013 Ford Flex bearing Wisconsin registration plate [ASH4529] parked in the rear driveway of the residence.

10. Your Affiant believes that CHS1 is credible. CHS1 has been extensively questioned by your Affiant, federal law enforcement officials, and local law enforcement officials within Wisconsin as to other individuals whom your Affiant is currently investigating and who are involved in drug trafficking and the prohibited possession of weapons.

11. CHS1's information is consistent with your Affiant's knowledge of FERGUSON. Furthermore, a substantial portion of the CHS1's information has been corroborated through independent investigation, information and evidence through oral and written reports, court ordered documents, physical and electronic surveillance, public records, and consensually recorded meetings and calls. CHS1 is a convicted felon with more than 4 felony convictions. CHS1 is cooperating with law enforcement for consideration for a pending federal case. For these reasons, your Affiant believes CHS1 to be reliable.

**FACTS ESTABLISHING PROBABLE CAUSE**

12. MASSTF subsequently opened an investigation into Quentin FERGUSON, who case agents have learned is a suspected member of the Gangster Disciples street gang. During the course of the investigation, case agents have gained information and evidence through oral and written reports, physical and electronic surveillance, public records, and consensually recorded meetings and calls. Through these investigative techniques, case agents determined FERGUSON was engaged in narcotics firearm trafficking. Specifically, MASSTF conducted a controlled narcotics purchase and a controlled firearm purchase from FERGUSON utilizing CHS1.

**Controlled Purchase of Heroin/Fentanyl and Firearm – April 14, 2025**

13. On April 14, 2025, CHS1, under the direction of MASSTF, conducted a controlled buy of 25 grams of heroin and a rifle from Quentin FERGUSON (DOB:

XX/XX/1986). On Monday April 14, 2025, case agents met with CHS1 at a pre-determined location. Case agents conducted a search of CHS1 and CHS1's vehicle with negative results for contraband.

14. Case agents discussed with CHS1 regarding placing a phone call to the target's phone (414)491-0916 to conduct a controlled purchase of a firearm and 25 grams of heroin. CHS1 advised case agents that CHS1 had already coordinated the transaction via phone prior to meeting with the case agents. CHS1 then provided a call history of his/her cell phone, where case agents then observed an outgoing call to target's phone number at approximately 11:31am. CHS1 advised case agents that the target informed him/her to arrive at the target's residence located at 5360 N. 38th Street, Milwaukee, Wisconsin.

15. Case agents provided CHS1 with $3,000.00 in pre-recorded U.S. currency to purchase a rifle and heroin from FERGUSON. CHS1 was advised by FERGUSON that the firearm would cost $1,500.00 in U.S. currency and the 25 grams of heroin would cost $1,500.00 in U.S. currency. Additionally, case agents provided CHS1 with an audio/visual recording device and transmitter, which CHS1 was in possession of during the course of the controlled buy. Case agents advised assisting officers of the meet location for the controlled buy.

16. Following the installation of the recording equipment, CHS1 departed to FERGUSON's residence located at 5360 N. 38th St. Surveillance was maintained by case agents who followed CHS1 while maintaining visual contact. At approximately 12:05pm, CHS1 arrived and parked at FERGUSON's residence. Members of Milwaukee Police Department Special Investigations Division maintained visual observations of CHS1 and the rear door of the residence. CHS1 approached and knocked at the rear door. The surveillance team later observed FERGUSON make contact with CHS1, who then entered into the FERGUSON's residence.

17. At approximately 12:26pm, the surveillance team observed CHS1 exiting the residence with FERGUSON. CHS1 was later observed entering into his/her vehicle. Shortly after CHS1 was observed re-entering into FERGUSON's residence along with FERGUSON. At approximately 12:30pm CHS1 exited the residence and entered back into his/her vehicle, departing southbound in the alley. Case agents followed and maintained view of CHS1 to the predetermined meeting location.

18. At approximately 12:33pm, CHS1 and the case agents arrived at the meeting location. At approximately 12:35pm, case agents retrieved the rifle using latex gloves and a clear plastic sandwich bag containing a light tan chunky substance suspected to be heroin. Case agents then conducted a search of CHS1 and his/her vehicle with negative results for additional contraband.

19. CHS1 stated upon arriving at the target residence CHS1 parked his/her vehicle in the alley. CHS1 stated contact was made with FERGUSON via Facetime. CHS1 advised he/she waited for FERGUSON to allow him/her into the rear door of the residence. CHS1 stated, upon entering the residence, they walked into the basement. CHS1 stated they talked for a while and the CHS advised the target he/she wanted 25 grits. Case agents know from training and experience the term "grits" is street slang for grams.

20. CHS1 stated while he/she was in the basement he/she observed approximately 100 grams of heroin on the table. CHS1 stated the 100 grams of heroin was packaged in a bag and had the appearance of a block. CHS1 advised he/she was asked if he/she wanted the heroin "re-rocked". Case agents know from training and experience the term "re-rocked" is street slang for the process of diluting the powdered narcotics and re-forming the narcotic into a more stable shape. This process would also add more weight to the narcotic so the drug dealers could make

more profit for diluted narcotics. CHS1 advised this process would take FERGUSON 10 minutes. CHS1 advised he/she then provided the target with $1500 in US currency and the target began repacking the requested 25 grams of heroin. CHS1 stated FERGUSON had a money counter in the residence that he attempted to use but it was not working properly. The CHS stated the target then began counting the money by hand. CHS1 stated FERGUSON then provided him/her with the heroin and the CHS1 inquired about the Kel-Tec rifle. CHS1 stated FERGUSON came to an agreement of $1,650.00 in US currency for the rifle.

21. CHS1 stated FERGUSON and himself/herself then walked outside towards the garage. CHS1 stated once inside the garage he/she observed ammunition and magazine for multiple caliber firearms. CHS1 stated that FERGUSON retrieved the rifle from the garage and placed it in a black bag. CHS1 then retrieved the bag and entered into his/her vehicle and left FERGUSON's residence.

22. Case agents then transferred the evidence to the Milwaukee FBI office. Case agents subjected a sample of the suspected heroin utilizing a Nark II 11 test, which tested positive for opiates. Case agents then subjected a sample of the heroin utilizing a Nark II 33, which tested positive for Fentanyl with a total weight of 25g with packaging. The purchased firearm was observed to be a Kel-Tec SU-16 caliber 5.56mm black in color with Serial # NER16. The Kel-Tec was equipped with a 40-round black Magpul Pmag magazine with several rounds of 5.56mm.

23. Before April 15, 2025, FERGUSON had been convicted in the state of Wisconsin of Possess w/Intent-THC (<=200 grams), a class I felony, Wisconsin Statutes 961.41(1m)(h)1 (case no.: 2015CF000645); Possession of THC (2nd+ Offense) [Modifiers:961-2nd OR SUB], a class I felony, Wisconsin Statutes961.41(3g)(e), Possession of Cocaine/Coca(2nd+) [Modifiers:

961-2nd OR SUB] (case no.:2006CF002800); and Burglary-Building or Dwelling [Modifier: Party to a Crime], a class F felony, Wisconsin Statutes 943.10(1)(a) (case no.: 2003CF002944).

**FERGUSON's New Residence**

24. In the month of September 0f 2025 case agents interviewed CHS1. CHS1 advised case agents FERGUSON has moved into a new residence located at 2722 N Sherman Blvd. Milwaukee, Wisconsin. CHS1 advised case agents FERGUSON has moved into the residence with his new girlfriend. Law enforcement records revealed Michelle MULLINS (DOB: XX/XX/1982) is associated with the residence.

**Surveillance of FERGUSON at 2722 N. Sherman Blvd.**

25. On, November 18, 2025, case agents began static surveillance at the address of 2722 N. Sherman Boulevard, Milwaukee, Wisconsin (hereinafter TARGET PREMISES). The surveillance was regarding target Quentin FERGUSON (DOB: XX/XX/1986). During the course of the surveillance, case agents were able to maintain view of the rear entry door portion of the residence, back yard, and rear parking slab. During the course of the surveillance conducted on FERGUSON between November 18th, 2025, and March 3rd, 2026, the following occurred:

**November 18, 2025**

a. 11: 00am – Case agents observed red in color 2013 Ford Flex 4 door vehicle bearing Wisconsin registration plate [ASH4529] parked in the rear driveway along with a white in color 2024 Volkswagen Tiguan bearing Texas registration plate [VTB7208].

b. 11:41am – A female suspected to be Michelle MULLINS (DOB: XX/XX/1982) is observed exiting the rear entry door of the target residence. MULLINS wore a gray shirt, gray pants, black sweater, and white shoes. MULLINS entered into the driver seat of the Volkswagen Tiguan. Shortly after FERGUSON was observed exiting the

rear entry door to the target residence. FERGUSON was observed wearing a green camouflage jacket, blue jeans, tan boots, and black winter cap. FERGUSON appeared to be holding a plate of food and was then observed entering into the front passenger seat of the vehicle. The vehicle was then observed reversing out of the parking slab and then traveling in an unknown direction.

c. 2:03pm – The Volkswagen Tiguan was observed arriving and parking in the rear slab. FERGUSON was observed exiting the driver's door of the Volkswagen Tiguan and MULLINS exited the front passenger door. FERGUSON appeared to wave someone towards him. Both MULLINS and FERGUSON are then observed entering the rear entry door to the target residence.

d. 2:05pm – A red sedan parks in front of the garage south of the target residence. An unknown black male (hereinafter subject #1) wearing a red and black jacket, white cap, and green pants was observed walking into the back yard of the target residence. subject #1 appeared to knock on the rear entry door. Subject #1 was then observed opening the rear entry door and walked into the TARGET PREMISES.

e. 2:14pm – Subject #1 was observed exiting the rear entry door to the target residence. Subject #1 was observed holding a small white package containing a white in color substance in both hands. Subject #1 was then observed exiting the rear gate of the back yard and away from view. The red sedan was then observed reversing out of view. Due to the position of surveillance, case agents were not able to determine if the subject entered into the driver seat of the red sedan. Through case agents training and experience case agents suspected the small white package containing a white in color substance to be cocaine.

f. 2:37pm – FERGUSON was observed exiting the rear entry door to the TARGET PREMISES and was then observed attempting to allow the dog into the residence. FERGUSON held a black duffle bag that appeared to contain a long heavy object. FERGUSON placed the bag in the front passenger seat. FERGUSON then pulled a black rag out of his right pants pocket and placed it in the front passenger compartment. FERGUSON sat down in the front passenger seat of the vehicle. The vehicle reversed out of view. Based on training and experience, case agents suspect a rifle style firearm was contained within the bag.

**November 21, 2025**

g. 7:44am – FERGUSON exited the TARGET PREMISES while holding several packages in his hand containing a white substance and entered the Volkswagen. FERGUSON was wearing a black hair wrap, white t-shirt, and gray shorts. The vehicle then departed, traveling out of view.

h. 7:50am – The Volkswagen returned back to the parking slab. FERGUSON could be observed on the phone while twisting a clear sandwich bag containing a white chunky substance suspected to be cocaine. These sandwich bags appeared to be the same bags FERGUSON was observed exiting the residence with. Shortly after, a white in color vehicle could be observed slowly driving in front of FERGUSON. FERGUSON placed one bag containing suspected cocaine in the passenger seat while holding additional bags suspected to contain cocaine. FERGUSON placed the bags in his right front pocket and reached into the driver’s floorboard. FERGUSON walked towards the alley to the suspected white vehicle that slowly traveled towards FERGUSON’s vehicle’s location. FERGUSON walked back towards the vehicle.

FERGUSON then walked back out into the alley out of view in the direction of the vehicle initially involved in the transaction. FERGUSON walked back into the Volkswagen. FERGUSON retrieved the clear bag containing a white chunky substance suspected to be cocaine from the front passenger seat. The Volkswagen then departed the area traveling out of view.

**i.** 9:03am – The Volkswagen returned in the alley in front of the garage of the TARGET PREMISES. MULLINS exited the TARGET PREMISES while wearing a brown and white jacket, white shirt, and light-colored pants. MULLINS walked towards the passenger side of the Volkswagen. FERGUSON exited the driver's door of the Volkswagen holding onto clothes. It appeared FERGUSON was concealing a longer object with the clothes by the manner in which FERGUSON carried the object. FERGUSON walked back into the TARGET PREMISES while holding the object concealed by the clothes. Through training and experience case agents believe the object FERGUSON was concealing with clothes was consistent with a rifle style firearm.

**November 23, 2025**

j. 9:23pm – The Volkswagen returned and reversed into the parking slab of the TARGET PREMISES. MULLINS exited the vehicle and retrieved a bag from the trunk. MULLINS then entered into the residence as FERGUSON stayed put in the driver's seat. FERGUSON appeared to be holding small bags containing an unknown substance. Due to the time of day, case agents were unable to determine the color of substance that were observed in the small bags. Through training and experience case agents believed these bags were consistent with the previously observed bags of

suspected narcotics FERGUSON possessed. FERGUSON exited the vehicle and approached the trunk of the vehicle. MULLINS exited the TARGET PREMISES and approached the trunk of the vehicle. FERGUSON and MULLINS retrieved bags from the trunk of the vehicle and entered the TARGET PREMISES.

**November 24, 2025**

k. 7:16am - The Volkswagen arrived and parked in the rear parking slab of the TARGET PREMISES. FERGUSON exited the driver's door of the vehicle. FERGUSON exited the vehicle while holding two baggies containing white substances suspected to be cocaine. Each bag was consistent with the size of an ounce weight amount. FERGUSON opened the front passenger door and appeared to search the passenger compartment. FERGUSON entered into the side garage door. FERGUSON then exited the garage with an unknown black object and unlocked the rear entry doors to the TARGET PREMISES. FERGUSON walked into the TARGET PREMISES.

l. 8:54am – FERGUSON exited the TARGET PREMISES. FERGUSON wore a white in color short sleeve t-shirt, gray pants, and white cap. FERGUSON entered the driver's side door of the Volkswagen while holding a white bag containing white in color substance suspected to be cocaine in his left hand. The vehicle reversed and traveled out of view.

**November 28, 2025**

m. 8:42am – FERGUSON exited the rear entry door to the TARGET PREMISES while carrying a black garbage bag. FERGUSON also carried a book bag on his back. FERGUSON placed the book bag in the vehicle and then placed the garbage bag in the trunk of the vehicle. FERGUSON held a clear bag containing a white substance,

which case agents suspect to be cocaine base. FERGUSON held the open bag near his face and then began to drive out of view.

n. 11:48am – The Volkswagen reversed into the parking slab of the TARGET PREMISES. FERGUSON held a bag containing a white substance suspected to be cocaine base on his lap. FERGUSON tied off the bag and placed it into his right pants pocket. FERGUSON placed the book bag on the center console. FERGUSON appeared to be placing items into the bag. FERGUSON exited the vehicle and walked to the rear entry door of the TARGET PREMISES.

**March 3, 2026**

o. 11:41am - A white in color 2013 Chevrolet Traverse bearing Illinois temporary tag [014626A43] arrived and parked in the garage of the TARGET PREMISES. FERGUSON exited the garage side door and entered the rear entry door to the TARGET PREMISES.

p. 11:47am – FERGUSON exited the rear entry door to the TARGET PREMISES. FERGUSON held a white shopping bag in his left hand while walking towards the garage side door. FERGUSON entered the garage and the Traverse could be observed reversing out of the garage and out of view.

q. 4:24pm – The Traverse parked in the garage of the TARGET PREMISES. FERGUSON and MULLINS exited the garage side door and walked towards the TARGET PREMISES. FERGUSON appeared to retrieve keys out of his front right pants pocket. During this time, FERGUSON turned towards MULLINS and case agents observed FERGUSON holding a digital gram scale along with an approximate half ounce of white in color substance, which case agents suspect to be cocaine

powder. FERGUSON then unlocked the Chicago style door and rear entry door to the TARGET PREMISES utilizing the keys. Both FERGUSON and MULLINS then entered the TARGET PREMISES.

**Trash Cover Search**

26. On Monday, February 16, 2026, case agents conducted a trash cover at the TARGET PREMISES regarding Quentin FERGUSON's suspected narcotics trafficking. Three garbage bags were collected from trash receptacles placed in the alley for trash collection. This garbage was clearly abandoned with no expectation of privacy where the garbage receptacles were located.

27. Case agents examined the garbage at the Federal Bureau of Investigation Milwaukee Headquarters, located at 3600 S. Lake Drive, St. Francis, Wisconsin 53235. During the examination the following items of evidentiary value were located:

| | | |
|---|---|---|
| Bag 1 | Item 8 | Four (4) twisted, corner cut/knotted clear plastic baggies. |
| Bag 2 | Item 2 | Two (2) plastic sandwich baggies |
| Bag 2 | Item 3 | Two (2) twisted, corner cut/knotted plastic clear baggies (one contained in clear plastic zip-lock bag) |
| Bag 3 | Item 1 | Five (5) plastic sandwich baggies |
| Bag 3 | Item 2 | One (1) plastic zip-lock bag |
| Bag 3 | Item 3 | Four (4) twisted, corner cut/knotted plastic baggies |

28. Based on case agents training and experience, the clear twisted corner-cut and knotted plastic bags are consistent with methods drug traffickers use to package and sell illicit

narcotics. Specifically, within Bag 2, Item 3, the twisted/knotted clear baggie containing a powdery gray residue held within the clear plastic zip-lock bag, was subjected to a field narcotics test by case agents, using Mobile Detect narcotics field tests. The powdery gray residue presumptively tested positive for heroin, fentanyl, and methamphetamine.

**Traffic Stop / Pursuit Arrest of FERGUSON**

29. On March 7, 2026, at approximately 00:21 hours, West Allis Police Department officers attempted to conduct a traffic stop of a 2013 Chevrolet Traverse bearing Illinois temporary tag [014626A43] in the 800 block of S 84th Street, West Allis, Wisconsin. The vehicle failed to stop, and subsequently, officers pursued it for approximately 14.04 miles until a PIT maneuver disabled it in the City of Brookfield, Wisconsin. The driver was removed from the vehicle, taken into custody, and identified as Quentin FERGUSON (DOB: XX/XX/1986) by his Wisconsin identification card. In FERGUSON's front right coin pocket of his jeans, officers located two folded pieces of paper containing a combined weight of 1.64 grams of a powdery substance. The powdery substance was presumptively tested utilizing a Fentanyl 33 Reagent Test, testing positive for fentanyl. 22.98 grams of suspected marijuana was located in a Sour Lemons zip bag in the driver's door map pocket. The suspected marijuana was presumptively tested utilizing the Duquenois-Levine Test, testing positive for the presence of tetrahydrocannabinol. A digital scale covered in white powder was located on the rear passenger seat floorboard area. Additionally, multiple cell phones, and $1,090.00 were also located. The temporary plates and vehicle identification number identified the registered owner of the Chevrolet Traverse listing to Michelle A. Mullins at the address: 2722 N Sherman Blvd, Milwaukee, Wisconsin. FERGUSON was charged with the following charges, Vehicle Operator Flee/Elude Officer, 1st-Degree Recklessly Endangering Safety, and Possess w/Intent Manufacture/Deliver Fentanyl<10grams. During the

booking process, FERGUSON provided the address, 2722 N Sherman Blvd, Milwaukee, as his home of record. Based on the probative evidence recovered, case agents believe that within the TARGET PREMISES, located at 2722 N Sherman Blvd, Milwaukee, Wisconsin, there is evidence of possession of narcotics and evidence of narcotics trafficking.

**Execution of Residential Warrant**

30. On March 23, 2026 at approximately 12:25pm the Honorable Stephen Dries, U.S. Magistrate Judge approved and signed search warrant for the residence of 2722 N. Sherman Bl., Milwaukee, WI 53210. On March 24, 2026 at approximately 6:00am the search warrant was executed at the residential address of 2722 N. Sherman Bl., Milwaukee, WI 53210. During the course of the search warrant, the FBI swat team conducted a clear of the residence prior to the search team arriving on scene. The search team took control of the scene and began entry photos at approximately 6:42am.

31. Takela ROGERS (DOB: XX/XX/ 1982), Michelle MULLINS (DOB: XX/XX/1982), and a juvenile child were present at the residence. Prior to clearing the residence, FBI Crisis Negotiation Team attempted to call MULLINS approximately 13 times between 6:00am and 6:07am in attempt to limit the damage from the breach. MULLINS did not return any attempts to make telephonic contact. At approximately 6:10am, MULLINS exited the residence and was detained. The search team then conducted a search of the residence with the following evidence recovered:

a. Black portable blender – Item 1B141

b. Six corner cut bags, two straws, and two pill casings with a white powdery residue – Item 1B140

c. ATI 1911 .22 LR semi-automatic pistol (Serial # A478163) – Item 1B139

d. Black iPhone in case with pink back – Item 1B138

e. (24) .22 caliber cartridges and (2) .25 caliber cartridges – Item 1B137

f. (8) .22 caliber cartridges and (7) 5.56 caliber cartridges - Item 1B136

g. Blue and white capsules (suspected Duloxetine Hydrochloride) – Item 1B135

h. White oval pills (suspected methamphetamine) - Item 1B134

i. Blue and green capsules (Suspected Duloxetine Hydrochloride) - Item 1B133

j. Suspected Methamphetamine (Total Package Weight 37.9g) - Item 1B132

k. Unknown white substance - Item 1B131

l. Miscellaneous Ammunition, (12) 7mm cartridges, (9) 300 blackout cartridges, (45) 32-30 cartridges, (43) 5.56 cartridges, (1) 10mm cartridges, (12) .22 LR cartridges, (4) 9mm cartridges, (2) .25 auto cartridges, (2) .40mm cartridges, (17) .380 cartridges, (54) 12 gauge shells, and (3) .38 special cartridges – Item 1B130

m. Magazine with approximately (10) .22 caliber cartridges - Item 1B129

n. Anderson Manufacturing AR-15 .223 caliber rifle painted resembling "Nerf" gun (Serial # 19205046) - Item 1B128

o. Blue Line Solutions M-15 .22 caliber rifle (Serial # BL78170) - Item 1B127

p. Buprenorphine and Naloxone sublingual film 8mg/2mg foil packets floating in the bathroom toilet along with a gray grocery bag located on the floor near the toilet – Photo'd only.

32. Evidence was seized, documented, and photographed prior to being collected. Items seized during the search warrant were document on a FD-597 (FBI Receipt for Property Form). At approximately 8:39am, FBI released the scene to Takela Rogers.

**CONCLUSION**

33. Based on my training and experience, I know that a sample of saliva containing epithelial cells may be found in and on a person. Swabbing the inside of a subject's mouth or cheek with a sterile cotton swab and preserving the saliva and cells obtained as a result is a reliable method for collecting a DNA sample. This process is called taking a "buccal swab" or "buccal smear". A case agent trained in how to collect a DNA sample and prevent contamination of the resulting evidence will conduct these searches using sterile swabbing kits for use in collection and preservation.

34. Give the foregoing, I believe that saliva containing epithelial cells taken from FERGUSON, together with the test results comparing the DNA profiles extracted from such samples with any and all human DNA profiles extracted from guns, firearms, documents, and substances recovered as described above, will be probative of FERGUSON's possession of those same items.

## **ATTACHMENT A**

**To be Searched**

The person of QUENTIN FERGUSON.

**ATTACHMENT B**

**Particular Things to be Seized**

Saliva of QUENTIN FERGUSON, containing epithelial cells, obtained via buccal swab.